UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROXIE GRANVILLE and
LISA WASHINGTON,

           Plaintiffs,

    v.

THE CITY OF PORTLAND, a municipal
corporation,

           Defendant.

_____

LISA WASHINGTON,

           Plaintiff,

    v.

THE CITY OF PORTLAND, a municipal
corporation,

           Defendant.

_____

Civil No. 02-1016-HA

OPINION AND ORDER

CONSOLIDATED CASES

Civil No. 04-1295-HA

HAGGERTY, Chief Judge:

OPINION AND ORDER- 1

Before the court are plaintiffs' Motion for Award of Attorney Fees and Costs [328] and defendant's Bill of Costs [334]. For the following reasons, the court grants in part and denies in part plaintiffs' Motion for Attorney Fees and Costs, and denies defendant's Bill of Costs.

**FACTUAL BACKGROUND**

The factual history of this case is extensive and has been thoroughly recited in the court's previous orders. Accordingly, the court will reference the facts only as they pertain to the pending motions.

In July 2002, plaintiffs Lisa Washington (Washington) and Roxie Granville (Granville) filed a complaint against their employer, the City of Portland (the City), alleging: (1) race discrimination under Title VII, 28 U.S.C. § 1983, and O.R.S. 659A.030; (2) gender discrimination under Title VII, 28 U.S.C. § 1983, and O.R.S. 659A.030; (3) violations of plaintiffs' right to free speech; and (4) violations of plaintiffs' right to association. *See* CV 02-1016-HA (hereinafter *Granville/Washington*). On August 18, 2004, the court dismissed plaintiffs' free speech and association claims. On September 13, 2004, Washington filed a complaint in CV 04-1295-HA, alleging: (1) retaliation under Title VII; (2) continuing discrimination under 28 U.S.C. § 1983, and O.R.S. 659A.030; (3) violations of the Americans With Disabilities Act (ADA); and (4) workers' compensation discrimination. *See* CV 04-1295-HA (hereinafter *Washington II*). On December 6, 2004, the court consolidated these cases pursuant to Fed. R. Civ. P. 42(a). On May 31, 2006, the court disallowed evidence relating to Washington's ADA claim.

///

On June 20, 2006, the jury returned separate special verdicts finding that plaintiffs

OPINION AND ORDER- 2

prevailed on their claims of race discrimination.  Plaintiffs did not prevail on their gender

discrimination claims, and Washington did not prevail on her claim for workers' compensation

discrimination.  On July 7, 2006, this court entered separate Judgments in favor of plaintiffs,

awarding each $50,000, plus back pay to be determined by the court, and reasonable attorney

fees, expert fees, and costs pursuant to 42. U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988(b-c).  The

Judgment for Washington also reflected that defendant was the prevailing party "as to the claims

remaining in plaintiff Washington's second lawsuit . . ." [326].

## ANALYSIS

### Plaintiffs' Motion for Attorney Fees

Plaintiffs seek an award of attorney fees in the amount of $146,450.  Plaintiffs reach this

amount by multiplying the hours worked by each of the four attorneys who worked on the

*Granville/Washington* and *Washington II* cases by their respective hourly rate, as follows:

|  | Hours Sought | Rate ($) | Total ($) |
|---|---|---|---|
| Daniel Snyder (Snyder) | 374.60 | 275.00 | 103, 015.00 |
| Scott Sharp (Sharp) | 31.40 | 125.00 | 3,925.00 |
| Sara Thistlethwaite (Thistlethwaite) | 198.60 | 175.00 | 34,755.00 |
| Douglas Kelso (Kelso) | 19.10 | 250.00 | 4,755.00 |

For the following reasons, the court grants plaintiffs an attorney fee award in the amount of

$137,902.20.

### 1.    Prevailing Party

Congress intended to permit the award of attorney fees only when a party has "prevailed

on the merits of at least some of his claims."  *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980)

(per curiam).  For purposes of the fee-shifting statutes, a "prevailing party" is "one who has been

OPINION AND ORDER- 3

awarded some relief by the court." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603 (2001).    The plaintiff must be able to "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792 (1989).  Plaintiffs qualify for attorney fees under § 1988 if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. " *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (allowing attorney fees when the plaintiff only received nominal damages).  Both enforceable judgments on the merits and court-ordered consent decrees constitute sufficient changes in the legal relationship between the parties to justify an award of attorney fees. *Buckhannon Bd. and Care Home, Inc.,* 532 U.S. at 604.  A plaintiff also "prevails" when he or she enters into a legally enforceable settlement agreement against the defendant. *Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002).

Defendant asks the court to award attorney fees and costs only for the *Granville/Washington* case, arguing that it was the prevailing party in *Washington II* and therefore plaintiffs cannot recover attorney fees or costs for that lawsuit.  Defendant correctly notes that the jury found in favor of it on Washington's claim for workers' compensation discrimination, and that Washington's ADA claim was dismissed prior to trial.  Likewise, the jury rejected Washington's gender discrimination claim.  Thus, plaintiffs did not prevail as to these claims.

///

Notwithstanding these unsuccessful claims, the court finds that Washington was the prevailing party in *Washington II* because she succeeded on the merits of her race discrimination

OPINION AND ORDER- 4

claim, a significant issue in the lawsuit.  After a full trial, the jury found that defendant

discriminated against Washington on the basis of her race.[1]  This finding was not date-specific,

and therefore encompasses Washington's claim of continuing race discrimination from

*Washington II,* as well as her original race discrimination claim from *Granville/Washington.*

The jury's finding was reflected in the Judgment, which identified defendant as the prevailing

party only as to "the claims *remaining*" in *Washington II,* and not *Washington II* in its entirety.

[326] (emphasis added).  Additionally, Washington received an enforceable judgment of $50,000

against defendant.  For these reasons, the court concludes that plaintiffs were the prevailing

parties in both *Granville/Washington* and *Washington II.*  As such, they are entitled to

reasonable attorney fees, expert fees, and costs for both lawsuits pursuant to 42. U.S.C. § 2000e-

5(k) and 42 U.S.C. § 1988(b-c).

**2.      Reasonable Attorney Fees**

    The calculation of a reasonable fee award usually involves two steps.  First, the court

must calculate the "lodestar figure" by taking the number of hours reasonably expended on the

litigation and multiplying it by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424,

433 (1983); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  The party seeking an

award of fees must submit evidence supporting the hours worked and the rates claimed.

*Hensley*, 461 U.S. at 433.  Second, the court must determine whether it is appropriate to enhance

or reduce the lodestar figure based on the set of factors set forth by the Ninth Circuit in *Kerr v.*

*Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), as modified by *Morales v. City of San*

---

[1]  The jury answered "yes" to the question, "Was Ms. Washington's race a motivating
factor in the City of Portland's decision to impose one or more adverse employment actions
against Ms. Washington?" [320].

*Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Among these factors are: (1) the time and labor

required; (2) the preclusion of other employment by the attorney due to the acceptance of the

case; (3) the customary fee; (4) any time limitations; and (5) the experience, reputation, and

ability of the attorney. There exists a "strong presumption" that the lodestar figure represents a

reasonable fee, and should only be enhanced or reduced in "rare and exceptional cases."

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

### A.    Hours Reasonably Expended

First, defendant objects that time spent on plaintiffs' unsuccessful claims should be

deducted. When a plaintiff prevails on some claims but not others in an employment

discrimination case, the court must determine whether there should be a deduction for

unsuccessful claims. *Hensley*, 461 U.S. at 434-35; *Odima v. Westin Tucson Hotel*, 53 F.3d

1484, 1499 (9th Cir. 1995). The court first asks whether the claims upon which the plaintiff

failed to prevail were related to the plaintiff's successful claims. *Odima*, 53 F.3d at 1499. If

unrelated, the final fee award may not include time expended on the unsuccessful claims. *Id.*

The test for relatedness is "whether the relief sought on the unsuccessful claim is intended to

remedy a course of conduct entirely distinct and separate from the course of conduct that gave

rise to the injury upon which the relief granted is premised. *See also Odima*, 53 F.3d at 1499

(finding that claims were related when they "arose from a common core of facts" and "required

virtually the same evidence"). The time spent on an unsuccessful claim may be compensable, in

full or in part, if it "contributes to the success of other claims." *Community Ass'n for Restoration

of the Environment v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002).

As discussed above, plaintiffs prevailed in their race discrimination claims in

OPINION AND ORDER- 6

*Granville/Washington* and *Washington II*.  Plaintiffs were unsuccessful, however, on the following claims:  (1) free speech; (2) association; (3) gender discrimination; (4) workers' compensation discrimination; and (5) violations of the ADA.  However, plaintiffs' claims all arose from the same core of facts – plaintiffs' employment relationship with defendant.  Moreover, most of the evidence on which plaintiffs' unsuccessful claims turned also supported and furthered their successful race discrimination claims.  Plaintiffs' speech and association claims required evidence concerning defendant's adoption and enforcement of policies governing plaintiffs' interactions with each other.  Washington's workers' compensation claim relied on evidence of defendant's refusal to accept her medical release form and defendant's modification of her job duties when she returned to work.  Her disability discrimination claim turned on the emotional and psychological consequences of working in an allegedly discriminatory environment, and defendant's failure to accommodate these conditions by placing her under a different supervisor.  All of this evidence supports an inference that defendant discriminated against plaintiffs on the basis of their race and therefore contributed to the success of plaintiffs' race discrimination claims.   Accordingly, the court finds that plaintiffs' unsuccessful claims were related to their successful race discrimination claims, and no deduction is necessary.

Defendant also urges the court to deduct time spent on Granville's return to work claim, the second BOLI complaint, and a second tort claims notice, since these issues were excluded from trial.  Plaintiffs' counsel stated that the total "excludes . . . time spent representing plaintiff Granville on an additional BOLI complaint not pursued . . ." [330].  Accordingly, the court strikes hours associated with Granville's second BOLI complaint and return to work issue (1.2 hours by Snyder; 1.3 hours by Thistlethwaite).

OPINION AND ORDER- 7

Second, defendant argues that the court should not award fees for time spent on unsuccessful motions. In particular, defendant urges the court to strike time spent on plaintiffs' unsuccessful motion for sanctions, in unsuccessfully opposing defendant's motion to use videotape in Washington's deposition, and unsuccessfully opposing a protective order for the deposition of Chris Sagan. Plaintiffs offer no argument as to why time these unsuccessful motions were "reasonably necessary to the successful prosecution of [their] claims," and thus have not met their burden. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986). Accordingly, the court strikes hours associated with these motions (3.3 hours by Snyder). Additionally, the court strikes all of Kelso's billings in November 2004, for editing motions and directing a response for summary judgment, since a review of the record shows that no summary judgment motion was pending at that time (10.4 hours).

In sum, the court finds that plaintiffs reasonably expended a total of 607.5 hours in litigating successful claims or claims related to successful claims.

### B.      Reasonable Hourly Rates

Defendant objects to the hourly rates sought for plaintiffs' attorneys Snyder ($275), Sharp ($125), Thistlethwaite ($175), and Kelso ($250). A reasonable hourly rate can be determined by looking at the prevailing rate in the relevant community, in this case, Portland, Oregon. *See Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997). The best evidence of the prevailing rate in Portland, Oregon is the 2002 Economic Survey conducted by the Oregon State Bar. *Roberts v. Interstate Distributor Co.*, 242 F. Supp. 2d 850, 857 (D. Or. 2002); *see also* 2002 Economic Survey, *available at* http://www.osbar.org/surveys_research/econsurv02/econsurvey02.html (September 2002).

OPINION AND ORDER- 8

After considering the time and labor expended by Mr. Snyder in this case, the preclusion of other employment due to his acceptance of this case, the time constraints, the customary fee, and the experience and reputation of Mr. Snyder, the court finds that $275 per hour represents a reasonable hourly rate. This is the rate charged by Portland practitioners in the seventy-fifth percentile with more than twenty, but less than thirty, years of experience. The court finds an hourly rate of $155 reasonable for an attorney of Ms. Thistlethwaite's experience and expertise, commensurate with Portland private practitioners in the seventy-fifth percentile, with less than three years of experience. The court further finds that the rate sought for Mr. Sharp is reasonable in light of his experience. Finally, because plaintiffs failed to offer any support for Kelso's claimed hourly rate of $250, the court sets Mr. Kelso's rate at $186, the average for civil litigation plaintiffs' attorneys in the Portland area.

C.    **Lodestar**

The chart below summarizes the court's rulings on plaintiffs' fee petition.

|  | Hours Sought | Reduction | Hours Granted | Rate ($) | Total ($) |
|---|---|---|---|---|---|
| Snyder | 374.60 | 4.5 | 370.1 | 275.00 | 101,777.50 |
| Sharp | 31.40 | --- | 31.4 | 125.00 | 3,925.00 |
| Thistlethwaite | 198.60 | 1.3 | 197.3 | 155.00 | 30,581.50 |
| Kelso | 19.10 | 10.4 | 8.7 | 186.00 | 1,618.20 |

**LODESTAR**                                    **$137,902.20**

Defendant argues that plaintiffs' requested fee is excessive in light of plaintiffs' limited success. *Hensley*, 461 U.S. at 440 (holding that a reduced fee award is appropriate if "the relief obtained is limited in comparison to the scope of the litigation as a whole"). The district court

OPINION AND ORDER- 9

must consider not only the monetary results but also any non-monetary results that the plaintiffs achieved for themselves and other members of society.  *Morales*, 96 F.3d at 365.

Plaintiffs recovered just under one-fifth of the amount they originally sought in compensatory damages and medical expenses.  Additionally, the lodestar is roughly 38 percent more than the plaintiffs' compensatory damages.  However, the Judgment also awarded plaintiffs back pay to be determined by the court, and they achieved significant non-monetary success similar to *Morales*.  *See id.* at 364-365.  Because they assessed damages against defendant, the verdicts established a deterrent to the City of Portland, the supervisors at Bureau of Development Services, and others who establish and enforce policies governing the City's employment practices.  Thus, the verdicts served the public purpose of helping to protect plaintiffs and other city employees from being subjected to similar unlawful discrimination in the future.  Given the extent of plaintiffs' monetary and non-monetary successes, the court finds the lodestar a reasonable amount.

There exists a "strong presumption" that the lodestar figure represents a reasonable fee, and should, therefore, only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  The court finds that this is not a "rare and exceptional" case warranting an upward adjustment.

**<u>Plaintiffs' Bill of Costs</u>**

Washington has submitted a cost bill in the amount of $8,772.93, representing the amount expended on costs such as expert witness fees, photocopies, postage, filing fees, court reporters, depositions, and transcripts.  Granville has submitted a cost bill in the amount of $5,700.26 for the same.

OPINION AND ORDER- 10

Defendant objects to many of plaintiffs' requests for costs, arguing that defendant was the prevailing party in *Washington II*, and therefore plaintiffs may not recover costs arising from that lawsuit. For the reasons set forth above, however, the court finds that Washington prevailed in *Washington II*. Therefore, costs are available to plaintiffs as the prevailing parties of *Granville/Washington* and *Washington II* under Fed. R. Civ. P. 54(d). Accordingly, defendant's objections to deposition fees and fees of the clerk arising from *Washington II* are overruled.

28 U.S.C. § 1920 enumerates the expenses which may be taxed as costs against the losing party. The court has broad discretionary power to allow or disallow a prevailing party to recoup the costs of litigation, but may not tax costs beyond those authorized by §1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). Courts are, however, free to construe the meaning and scope of the items enumerated as taxable costs in § 1920. *Lee v. Walters*, 2002 WL 31972186, *1 (D. Or. 2002).

For the reasons set forth below, the court grants costs to Granville in the amount of $5,206.39, and to Washington in the amount of $8,114.43.

**1.      Expert Witness Fees**

Defendant objects to plaintiffs' motions insofar as they seek expert witness fees. Plaintiffs brought this action pursuant to 42 U.S.C. § 1983 and Title VII. 42 U.S.C. § 1988 authorizes the award of attorney fees in actions proceeding under § 1983, but limits the award of expert fees to actions proceeding under § 1981. *See* § 1988(c) ("In awarding an attorney's fee . . . in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."); *Ngo v. Parks*, 1999 WL 700636 (D. Or. 1999).

OPINION AND ORDER- 11

However, the Civil Rights Act of 1991 expressly authorizes expert fee awards for successful litigants in Title VII suits. *See* 42 U.S.C. § 2000e-5(k) (providing for the award of a "reasonable attorney's fee (including expert fees) as part of the costs"); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992) ("Congress rejected the notion that successful litigants should not be granted expert fees in Title VII suits."). Plaintiffs prevailed on their Title VII race discrimination claims. The jury found that defendant imposed an adverse employment action on plaintiffs that was motivated in part by their race. Therefore, plaintiffs are entitled to expert witness fees under § 2000e-5(k).

Defendant further contends that expert fees should not be awarded because the only expert testimony was from treating physicians in support of plaintiffs' unsuccessful ADA claim. However, medical testimony was also relevant to plaintiffs' race discrimination claims insofar as it established damages and the subjective element of the hostile environment issue. Accordingly, the court grants expert witness fees to Washington in the amount of $2,950 and to Granville in the amount of $880.00.

**2.     Photocopying Charges**

Additionally, defendant objects to plaintiffs' request for photocopying charges. Section 1920(4) specifically allows recovery of "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." This district has held that "copying costs for documents produced in discovery, submitted to the court for consideration of motions, and used as exhibits at trial are recoverable." *Id.* at *1 (citing *Fressell v. AT & T Technologies, Inc.*, 103 F.R.D. 111, 115-116 (N.D. Ga. 1984)). By contrast, copies that were "prepared for the convenience of the attorneys" such as extra copies of filed papers, correspondence, and copies of

OPINION AND ORDER- 12

cases are not recoverable. *Lee*, 2002 WL 31972186, at *1 (finding that the number of pleadings and exhibits used in the case did not justify defendant's request to recover costs for over 350,000 copies).

Each plaintiff seeks $1,581.60, for a total of 20,488 copies at 15 cents each. Defendant argues that these amounts exceed what is authorized by federal statute because plaintiffs could not have conceivably produced in discovery, submitted to the Court for consideration in motion, or used as exhibits over 20,000 copies. This court disagrees. Together, *Granville/Washington* and *Washington II* spanned four years and culminated in a nine-day jury trial. The parties litigated six claims, filed numerous motions including two summary judgment motions, and conducted extensive discovery. Given the magnitude of these actions, the court is satisfied that these copies were produced in discovery, submitted to the court, or used as exhibits. Accordingly, the court grants photocopying costs to each plaintiff in the amount of $1,584.60.

**3.     Other Costs**

The court strikes $177.26 in subpoena and process server fees for witnesses who never appeared for plaintiffs at trial. The court further strikes $76.00 in subpoena and process server fees for Linda Grounds, Ph.D. as duplicative of the $825.00 trial appearance fee already granted.

Additionally, the court strikes $94.00 for a transcript of the pretrial conference, which was obtained for the convenience of plaintiff's counsel who was unable to attend.

Finally, the court strikes costs for facsimiles, messenger, and postage, since 28 USC § 1920 does not authorize recovery of these costs.

///

**<u>Defendant's Bill of Costs</u>**

OPINION AND ORDER- 13

Defendant has submitted a cost bill in the amount of $5,688.25 for expenses incurred in connection with *Washington II*, arguing that it is the prevailing party of that lawsuit. As discussed above, however, the court finds that Washington prevailed in *Washington II*. Accordingly, the court denies defendant's bill of costs in its entirety.

## CONCLUSION

Plaintiffs' Motion for Attorney Fees and Costs [328] is granted in part and denied in part. Plaintiff Granville's Bill of Costs [332] is granted in the amount of $5,206.39. Plaintiff Washington's Bill of Costs [333] is granted in the amount of $8,114.43. Defendant's Bill of Costs [334] is denied. Plaintiffs are awarded attorney fees in the amount of $137,902.20.

DATED this   16th  day of October, 2006.


_____/s/Ancer L. Haggerty_____
Ancer L. Haggerty
United States District Judge